(128 App. Div. 856.)

COADY v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. November 27, 1908.)

CARRIERS (§ 318*)—INJURY TO PASSENGER—PROXIMATE CAUSE.

Where, in an action for injuries to a passenger, the only allegation of negligence submitted was defendant's failure to have the guard chains in place across the edge of the platforms of the cars, between which plaintiff's foot was caught and crushed, and there was no evidence as to the purpose of the chains nor how they could have prevented the accident had they been in place, such negligence was not shown to be the proximate cause of the injury.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 318.*]

Appeal from Trial Term, Kings County.

Action by Joseph M. L. Coady, an infant, by Peter McCabe, his guardian ad litem, against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

D. A. Marsh, for appellant.

John E. Walker, for respondent.

WOODWARD, J. The plaintiff, aside from formal matters, alleges as a cause of action that on the 8th day of September, 1905, while a passenger on one of defendant's local trains crossing the Brooklyn Bridge, riding upon the platform of a crowded car, he was thrown by a violent jerking or swaying of the car in passing over a curve, and jostled by passengers in such a manner that his foot was caught between the car on which he was standing and the one behind it, causing severe injuries. In addition to the allegation of an unusual jerk or jolt, the complaint alleges that:

"Said accident was caused by the negligence of the defendant, its servants in control and charge of said car and train in failing to have its guard chains in place across the edge of the platforms of said cars, and in the careless and faulty way in which said car and train were operated causing it to jerk and jolt, and in overcrowding said car and train."

The court took from the jury all question as to the negligence of the defendant in the operation of the train, and submitted to them simply the question of the chains—whether the chains were across the platforms of the cars at the time of the accident. And the question presented upon this appeal, the jury having found in favor of the plaintiff, is whether there was properly such a question to be submitted.

There is not a particle of evidence in this case, so far as we are able to discover, that, if the chains had been in position, they would have operated to prevent this accident, or that they would have had any tendency to do so. The plaintiff testified to the manner in which he boarded the defendant's car during the "rush hours"; that the crowd was about the same as usual, and that he was obliged to stand on the rear platform, facing New York, going to Brooklyn; that there was a car attached in the rear, the platform of which was likewise

crowded; that, "after the car had started, the guard put his chains up until he got out quite a distance, and then he took them down. By 'he put his chains up' I mean he put them across between the cars so as to keep the people from getting in." He then describes himself as standing in the middle of the platform, holding on to the upright bar which supports the hood over the platform, about a foot away from the same, and that as the car struck the curve, and the passengers began coming out on the platform, they crowded him and he got his foot caught between the cars, etc. Then he continues: "At the time that the accident happened to me, the cross chains were down." This is all his testimony on direct examination in reference to the chains. On cross-examination he says:

"These chains that I spoke about are on the edge of platforms, and cross sometimes that gate. They are not where the gates are at the side. There is a sort of chain that they put from one side or entrance way or passageway on the end of the car where people go to and fro between the different cars. I do not know how many chains were on that car. I guess there were more than one. I guess so—more than one or two. As to how low the lowest one came, I did not take any track of them at all. The chain was not two or three inches from the platform. I guess they came up about to my waist. If I was standing there and the crowd pushed against me, that chain could not prevent me or hold my foot from going out."

Plaintiff's principal witness simply testifies, in support of the proposition, that the chains were down when he stepped from the rear car to the forward car to assist the plaintiff after he was injured, but makes no suggestion as to the purpose of the chains, nor indicates in what possible manner they could have prevented this particular accident. The chains referred to are obviously such as are in common use to prevent people passing to and fro between the cars while in transit, and were not designed to meet the situation which resulted in the plaintiff's injuries, and, as the plaintiff himself says, it "could not prevent me or hold my foot from going out." The cars do not appear to be different from those in common use. No defect in the cars is urged or suggested. They were such as practical experience has justified the use of in a long series of years; and the chain being used merely as a bar to the passengers running to and fro between the cars while in transit, and not for the purpose of preventing people from being crowded into dangerous places, it is difficult to understand what negligence can be predicated upon the fact that the chain was not in place at the time of the accident. If it had been in place, there is not the slightest evidence to indicate that the accident would not have happened just as it did, and there is, therefore, no evidence that the absence of the chain was the proximate cause of the accident. There being no evidence of negligence in the operation of the train, no evidence of any defect in the equipment, and no evidence that the taking down of this chain had anything to do with the accident, the question of whether it was in fact up or down is immaterial, and the plaintiff had failed to show any neglect of a duty which the defendant owed to him.

The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur.